UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     NO.    19-cr-00113

VERSUS     JUDGE SUSIE MORGAN

MARTHA BUEZO MARTINEZ     MAG. JUDGE MICHAEL NORTH

# UNDER SEAL

### MEMORANDUM IN SUPPORT OF
### MOTION FOR DOWNWARD VARIANCE

**MAY IT PLEASE THE COURT:**

    Defendant, Martha Martinez, age 51, is the mother of three children and has worked hard over the last decade to create and develop a company that provides work in the construction field, at times providing jobs for as many as 90 workers a week. Through her employment, she assists with providing for her family including both of her elderly parents and her grandson.

    In 2012, Ms. Martinez and her brother created Infinity Construction Resources, Inc. ("Infinity") *See* PSR at ¶ 9. The company provides labor for asbestos abatement and demolition and provides employment for an average of 50 workers per week. In 2014, Ms. Martinez acquired her brother's share of the business and has worked very hard to maintain and grow the business through good times and bad times over the last six years.

    Ms. Martinez is before this Court for failing to pay federally required FICA taxes due and owing from her company, Infinity. She has accepted responsibility and plead guilty to Count Two of the Bill of Information. As part of her plea with the Federal Government, Ms. Martinez has agreed that the restitution in this case is $272,096.00. Ms. Martinez agreed to this amount of

1

restitution due and owing as part of her plea as the Mandatory Victim Restitution Act of 1996 does not apply to Title 26 offense. *See* PSR at ¶ 14.

In connection with this agreed upon restitution amount, Ms. Martinez requested to be allowed to immediately begin restitution payments, even prior to sentencing. *See* Rec. Doc. No. 34 (Joint Motion to Deposit Restitution Payments Made in Advance of Sentencing). Ms. Martinez has already begun making restitution payments and to date has paid $35,000.00 in restitution.

As this Honorable Court is aware, the United States Supreme Court has dictated that the sentencing guidelines are advisory only, but must be considered by the sentencing court in determining the sentence. *Gall v. United States*, 128 S.Ct. at 596, 597 (2007); U.S. *v. Booker*, 125 S.Ct. 738, 756, 757 (2005). After calculating and considering the guidelines, the sentencing court must then review the sentencing factors in 18 U.S.C. 3553(a), and, necessarily, any variances, upward or downward, from the guideline calculation justified by these statutory factors and variances, and explain them. "...[T]he sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. §3553(a), explaining any variance from the former with reference to the latter." *Nelson v. U.S.*, 129 S.Ct. 890, 892 (2009). When the sentencing court does not follow this procedure, the sentence must be vacated and remanded. *United States v. Tisdale*, 264 F.App'x 403 (5th Cir. 2008).

The district court is not entitled to presume that its within-guideline range sentence is reasonable. *Gall, supra* at 596, 597; *Rita v. U.S.*, 127 S.Ct. 2456, 2465 (2007). The sentencing statute, 18 U.S.C. 3553(a), requires the sentencing court to weigh and balance all pertinent sentencing factors and "...impose a sentence that is sufficient, but not greater than necessary, to

comply with the basic aims of sentencing as set forth above". (Emphasis added.) *Rita, Id.*, at 2463. A below guidelines sentence may be based on circumstances that are not extraordinary. *Gall, supra*, at 595. The reviewing "...court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range". *Gall, supra*, at 597. The next step, as required by *U.S. v. Nelson, supra*, is that the court must explain "any variance in light of 18 U.S.C. 3553(a)".

The sentencing court's failure to follow these procedural mandates of the United States Supreme Court eliminates the non-binding, appellate court "rebuttable" (*U.S. v. Newsome*, 515 F.3d 374, 379 (5th Cir. 2008)), presumption that the within Guideline sentence is reasonable. *Rita, supra*, at 2463, 2465.

Applying similar sentencing considerations, especially reformation of the defendant, his plea and cooperation, and downward variance factors, the United States Supreme Court in *Gall, supra*, reversed the Court of Appeal's remand, and affirmed the district court's sentence of probation, which was a non-incarceration reduction from the PSR's Zone D guideline calculation of 30-37 months for the defendant's role in a drug conspiracy. The Supreme Court recognized with approval the district court's review of variances and 18 U.S.C. 3553(a) factors justifying the probationary sentence, concluding with:

> Any term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who, the Court has found, understands the consequences of his criminal conduct and is doing everything in his power to forge a new life. The Defendant's post-offense conduct indicates neither that he will return to criminal behavior nor that the Defendant is a danger to society.

*Id., Gall, supra*, at 593.

In *U.S. v. Rowan*, 530 F.3d 379 (5th Cir. 2008), the defendant pleaded guilty to illegal

possession of child pornography, with a calculated Guideline range of 46-57 months of imprisonment, a Zone D, non-probationary zone under the Guidelines. The court imposed a below Guideline, non-incarceration sentence of 60 months of probation. The Government appealed, and the reviewing court vacated and remanded for re-sentencing. After the decision in *Gall, supra*, the United States Supreme Court granted the defendant/petitioner's writ, vacated the Fifth Circuit opinion, and remanded for consideration under *Gall, supra*. The Fifth Circuit then reviewed the 60-month probationary sentence under *Gall, supra*. The court found no procedural error in the district court's sentence, when it followed the dictates of 18 U.S.C. 3553(a), and the standards in *Gall, supra*. The court affirmed the probationary sentence.

Similar treatment was given in *U.S. v. Duhon*, 541 F.3d 391 (5th Cir. 2008), wherein, on remand from the United States Supreme Court, the Fifth Circuit affirmed the district court's 60-month probationary sentence in a child pornography case, in the new light of *Gall, supra*. The court reiterated that the probationary sentence in *Rowan, supra*, under the *Gall, supra*, standard, "...was substantively reasonable." *Id., Duhon*, at 399.

The court noted that Rowan downloaded and possessed "over 400 images of hard core child pornography", and Duhon "downloaded 15 images of child pornography." *Id., Duhon*, at 399. In spite of the dangerous, pedophilia nature of defendants Rowan and Duhon, the Fifth Circuit in *Duhon, supra*, approved the district courts' variances that justified the below-Guideline, probationary sentences, to wit: "The district court, however, believed probation was appropriate because Rowan, like Duhon, did not have a criminal history and also would benefit most from continuing his medical treatment with his psychologist." *Id*. The court found no abuse of

4

discretion by the sentencing court in *Rowan* or *Duhon*.

Under all standards of fairness and reasonability, if the totality of circumstances justify the reasonableness of probation for hard core multiple instances of child pornography in *Rowan, supra*, and *Duhon, supra*, Ms. Martinez's totality of circumstances in this non-pedophilia, non-sex, non-drug, and non-violent economic crime case pales in comparison.

These mandatory rules and principles have been re-emphasized and reconfirmed by the United States Supreme Court in the re-sentencing case of *Pepper v. United States*, 131 S.Ct. 1229 (March 2, 2011), wherein the Supreme Court required that all information about a defendant's life and character must be weighed by the sentencing court so "...that 'the punishment should fit the offender and not merely the crime,'" as follows:

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime   and the punishment to ensure.' *Koon v. United States*, 518 U.S. 81 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.' *Williams*, 337 U.S., at 247, 69 S.Ct. 1079; see also *Pennsylvania ex rel, Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 82 L.Ed. 43 (1937) ('for the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances and that there be taken into account the circumstances of the offense together with the character and propensities of the offender.').
>
>    Consistent with this principle, we have observed that 'both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.' *Williams*, 337 U.S., at 246, 69 S.Ct. 1079. In particular, we have emphasized that '[h]ighly relevant-if not essential-to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.' *Id.,* at 247, 69 S.Ct. 1079. Permitting sentencing courts to consider the widest

5

possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant. <u>Wasman v. United States, 468 U.S. 559, 564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).</u>

The PSR provides a basis and reason for a variance and the totality of Ms. Martinez's circumstances favor a reduced sentence, through a motion for a variance under 18 U.S.C. 3553(a). The PSR, ¶¶ 72 - 74, suggests, without recommendation, that variance factors under 18 U.S.C. 3553(a), include Ms. Martinez is 50 (now 51) and the instant offense is her only conviction. Considering the seriousness and nature of the offense, under 18 U.S.C. 3553(a), the probation report notes that "[t]he instant offense did not involve a danger to the public or a risk to public safety". *See* PSR ¶ 74.  Lastly, the Probation Report notes that Ms. Martinez has a stable work history and could begin paying restitution immediately - which she has already begun doing.  As noted above, Ms. Martinez has already paid $35,000.00 in restitution and these payments were made during the economic downturn caused by the COVID-19 pandemic.

A variance can also be based on Ms. Martinez's steady employment, historically and currently, and her company's employment of many others in the temporary labor force - who usually have difficulty finding other employment.  These are the hard to employ workers who have a hard time finding jobs and who are often the downtrodden with no other place to go for employment. Sentencing Ms. Martinez to a non-incarceration sentence will enable her company to continue to provide employment for this needful segment of the work force and allow her to continue to make restitution payments.  The converse is also true – incarcerating Ms. Martinez will cause the shutdown of the business and employment of these types of workers.

Similar cases in this District have allowed a downward variance to a probationary sentence.

6

Additionally, a downward variance based on economic loss to employees and the community, is not unprecedented, and is supported by the jurisprudence. Locally, for instance, in *U.S. v. Ton*, No. 12-CR-272, Section H, USDC, EDLA, May 30, 2013, Mr. Ton was sentenced to a term of probation, which was downward from the Total Offense Level of 21, 37 - 46 months, for a felony tax plea with a tax loss and restitution of approximately $3.6 million. Even after a four level reduction recommendation by the government for cooperation, Mr. Ton still faced jail time and a complete interruption, if not destruction, of his sole proprietor crew boat business. One of the reasons for the downward departure, under 18 U.S.C. 3553(a), was the Court's recognition of the business loss to the company, its employees and the community.

> I've also considered the many letters from the people in Plaquemines Parish that have been affected by the actions of Mr. Ton that discussed his willingness to serve following the horrors of Katrina, as well as the oil spill, and his commitment to his community <u>and to his company and the many employees that would be affected by this morning's event</u>. And I have considered all of those things, as well as the factors annunciated in the Code of Criminal Procedure. (The Honorable Jane Triche Milazzo.) (Emphasis added.)

The authorities pertaining to variances, as submitted by Mr. Ton's counsel, Mr. Kenneth Polite, are just as applicable in Ms. Martinez's case and indicate that Circuit Courts are affirming sentences that imposed as a result of variances being granted under similar circumstances. Other cases in this district with similar outcomes include:

- **18-cr-00037** – Marcia Jordan pled guilty to one count of tax evasion. With an offense level of 15, criminal history category of I, and guideline imprisonment range of 18 to 24 months, Judge Lemelle sentenced her to 5 years' probation along with restitution of $313,899.00.

- **19-cr-00200** – Danielle Franklin pled guilty to one count of Aiding and Assisting in the Presentation of a False Tax Return. Judge Fallon ultimately sentenced her to 4 years' probation along with restitution of $229,573.43.

7

- **15-cr-00264** – Rommel Cordova pled guilty to one count of Willfully Making and Subscribing a False Income Tax Return. With an offense level of 13, criminal history category of I, and guideline imprisonment range of 12 to 18 months, Judge Milazzo sentenced him to 5 years' probation along with restitution of $165,904.00.

- **19-cr-00066** – Patricia Hargis pled guilty to one count of Willfully Making and Subscribing a False Income Tax Return. With an offense level of 15, criminal history category of I, and guideline imprisonment range of 18 to 24 months, Judge Lemmon sentenced her to a probationary period of home confinement along with restitution of $110,810.00.

- **17-cr-00123** – Brendel Deemer pled guilty to one count of Making and Subscribing a False Income Tax Return. Judge Zainey ultimately sentenced her to 3 years' probation along with restitution of $88,651.22.

- **17-cr-00123** – Following a trial, Craig Taffaro was found guilty of counts 1 – 12, which included tax evasion, filing a false income tax return, and failure to file a tax return. Mr. Taffaro received a downward variance and was sentenced by Judge Feldman to 5 years of probation for each count, running concurrently, along with restitution of more than $75,000.00.

- **18-cr-00050** – Sandra Raven pled guilty to one count of Wire Fraud in connection with her tax preparing company. Judge Ashe ultimately sentenced her to 4 years' probation along with restitution of $13,468.00.

In *United States v. Holz*, 118 F.App's 928 (6th Cir. 2004), the Sixth Circuit affirmed the district court's grant of a downward sentence upon defendant's showing that his business would fail without his continued management. Emphasizing that there was no one who could take over defendant's business, the court considered that if the business failed, one of the defendant's brothers would lose his $4.5 million investment. The court also weighed the fact that if defendant went to prison and lost his business, his four employees would lose their jobs while the independent contractors engaged on defendant's current projects would also suffer. The district court found, and the Sixth Circuit agreed, that, if defendant were incarcerated, the resulting family and business

8

impact would cause "extraordinary harm," justifying a downward departure sentence.

The Second Circuit also affirmed a downward sentence on the basis of business impact in *United States v. Milikowsky*, 65 F.3d 4 (2nd Cir. 1995). In that case, the defendant received two years' probation and home confinement – a departure from the eight to fourteen month prison sentence recommended in the guidelines range, which was contrary to the recommendation for a jail sentence for all anti-trust violators, in accordance with the anti-trust guideline urged by the government. The court determined that the "extraordinary harm" to defendant's employees resulting from defendant's imprisonment and the subsequent loss of his business warranted a downward variance. Among the factors the court considered were defendant's indispensable role in the companies and that his unique skills and knowledge were needed to operate his companies. The court also found that if the companies failed, close to 200 employees would lose their jobs. The court held these circumstances merited a downward variance "to reduce the destructive effects that incarceration of a defendant may have on innocent third parties." *Id.* at 9-10. *See also United States v. Kahn*, 94 F.App'x 33, 38-0 (2nd Cir. 2004) (holding that a downward sentence may be appropriate based on business impact resulting from defendant's imprisonment, but remanding for further fact finding); *United States v. Olbres*, 99 F.2d 28 (1st Cir. 1996) (reversing and remanding for additional fact-finding the lower court's denial of a downward sentence on the basis of defendant's business impact, including the job loss for twelve employees.) *Accord: U.S. v. Tomko*, 562 F.3d 558, 572 (3rd Cir. 2009).

Maintaining Ms. Martinez in her current business capacity also enables her to continue to support her family, extended family, and grandchildren. The provisions of 18 U.S.C. 3553(a),

9

mitigate against a sentence of incarceration.   Ms. Martinez has no prior convictions, and assuredly will never violate the law again.  She is truly remorseful.  She has already begun paying her restitution, and will not repeat this offense.  There is no need for further deterrence of Ms. Martinez.   The public needs no protection from any crimes by her, which will never happen again. There is no need for institutional, "educational" or vocational training..." or "other correctional treatment..." 18 U.S.C. 3553(a)(2)(1).

A sentence of probation, or home detention, will permit Ms. Martinez to continue with her employment, and the employment of many others, who might not be able to find or engage in more permanent employment, as well as enabling her to support her family.

Ms. Martinez prays for a sentence of probation, or at least home confinement, in lieu of incarceration.

                                                        Respectfully submitted,

                                                        */s/ Brian J. Capitelli*
                                                        BRIAN J. CAPITELLI, BR# 27398
                                                        CAPITELLI AND WICKER
                                                        1100 Poydras St., Suite 2950
                                                        New Orleans, Louisiana 70163
                                                        Telephone: (504) 582-2425
                                                        Facsimile: (504) 582-2422
                                                        brian@capitelliandwicker.com
                                                        *Counsel for Martha B. Martinez*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of July 2021, I electronically filed the foregoing with the Clerk of Court and provided a copy to counsel for the Government, AUSA Duane Evans.

*/s/ Brian J. Capitelli*
BRIAN J. CAPITELLI